UNITED STATES, to Use of WOOD, v. UNITED SURETY CO. et al.

(District Court, N. D. California, S. D.   January 31, 1912.)

1. COURTS (§ 342*)—FEDERAL COURTS—FORMS OF ACTION.

The equitable doctrine of subrogation cannot be applied in a federal court of law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 912, 913; Dec. Dig. § 342.*]

2. INDEMNITY (§ 15*)—PERSONS ENTITLED TO ENFORCE.

Where persons other than the contractor, for whom a surety company had executed a bond for the faithful performance of a contract with the United States for a public improvement, executed a bond to indemnify the surety company against damages that it might suffer under the bond, but there was no privity in interest between the indemnitors and a creditor seeking to avail himself of the benefit of the indemnity, the creditor was not entitled to enforce the same, especially as it appeared that the surety company having become insolvent had suffered no damage by reason of the execution of the bond.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 37; Dec. Dig. § 15.*]

3. UNITED STATES (§ 67*)—PUBLIC IMPROVEMENTS—CONTRACTORS—BOND—ACTION—TIME—STATUTES—CONSTRUCTION.

Act Cong. Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), provides that no suit shall be brought on a United States government contractor's bond by a subcontractor or materialman until after complete performance of the contract and final settlement, but shall be commenced within one year from that date and not later. During the first six months the government alone is given the right to sue with the right of any laborer or materialman to intervene, and if no suit is brought within six months, then any creditor is authorized to sue in the name of the United States, etc. The act then provides that, in all such suits instituted personally, notice of the pendency thereof, informing them of their rights to intervene as the court may order, shall be given to all known creditors, and in addition notice of publication shall be given, the last publication to be at least three months before the time limited therefor. Held, that a creditor's failure to institute a suit under such act in sufficient time to allow the full notice required to be given to creditors was not a jurisdictional defect which could be made the subject of demurrer.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

At Law.   Action by the United States, for the Use of F. C. Wood, etc., against the United Surety Company.   Demurrer of Rickon-Ehrhart Engineering & Construction Company, and the individuals com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

posing such firm, sustained, and motion to dismiss as to them granted, and demurrer overruled, and motion to dismiss as to other defendants denied.

F. H. Gould and Frank Freeman, for plaintiff.
Frank S. Brittain, for defendants.

VAN FLEET, District Judge. The demurrer interposed to the complaint by the defendants, the Rickon-Ehrhart Engineering & Construction Company and the individual members of that copartnership, as likewise their motion to dismiss the action as to them, must be sustained. The action is upon a contractor's bond running to the United States, executed under and governed by the provisions of the act of Congress of February 24, 1905 (chapter 778, 33 Stat. 811 [U. S. Comp. St. Supp. 1909, p. 948]), giving to persons performing labor and furnishing materials in the construction of public works the right to maintain an action on the bond given to secure the performance of such works in the name of the United States for the use of the party beneficially concerned, and regardless of the amount involved or the citizenship of the parties, in the Circuit Court of the district where the particular works is located.

The general allegations of each count in the complaint are, in substance, that the defendant Stanley Construction Company, a corporation, entered into the contract referred to in the complaint for the construction of certain public works in this district, and that the defendant United Surety Company, a corporation, entered into with the United States, on behalf of such contractor, the usual penal bond required under the act to secure the faithful performance of the contract, one of the conditions being that the contractor "shall promptly make full payment to all persons supplying labor and materials for the prosecution of the work provided for" in the contract; that the contract has been fully performed and final settlement had thereon; that during the progress of its performance the relator and his several assignors, at the instance and request of the contractor, performed certain work, labor, and services, and furnished certain materials which were used in and upon the work embraced in the contract, at agreed and stipulated prices, the compensation for which, though due and demanded, has not been paid; that, other than the present, no suit has been brought upon the bond of the surety company by reason of said contract or otherwise by the United States or any creditor, and that said surety company is now insolvent and in liquidation.

The only allegation as to these particular defendants is that, at the date of the execution of said contract and the giving of said bond by the surety company, the defendants "James Stanley, Fred J. H. Rickon, and R. Ehrhart, as copartners doing business as Rickon-Ehrhart Engineering & Construction Company, and as individuals, made, executed, and delivered to the said United Surety Company, a corporation, their several and joint bond and obligation, conditioned, among other things, that if the said James Stanley, Fred J. H. Rickon, and R. Ehrhart, copartners doing business under the firm name and style

192 F.—63

of Rickon-Ehrhart Engineering & Construction Company, and the said James Stanley, Fred J. H. Rickon, and R. Ehrhart, individually, shall and do pay to the said United Surety Company, in advance, the premium or charge of $400, made by the said United Surety Company for executing the bond or obligation attached hereto and marked 'Exhibit B' [the bond to the United States], and continuing the same so long as the said United Surety Company's liability on said bond or obligation shall continue, and the said liability upon the said bond or obligation shall continue so long as the above-mentioned bond, the said Exhibit B, shall be in force, and until the said United Surety Company shall be discharged and released of any further liability thereunder, and until sufficient official notice, in writing, of the termination of said bond and the liability thereunder, shall be served upon the company, and shall hold and keep harmless the said United Surety Company from and against all loss, damages, costs, charges, and expenses of whatever nature or kind which the company shall or may, at any time, sustain, incur, or be put to, for, or by reason, or in consequence of the company having given and executed the said bond; a copy of which said bond is hereto attached, marked 'Exhibit C' and made a part of this complaint, as though set out herein." The prayer is for judgment against all of the defendants for the amount of the several demands counted upon, with interest and costs.

[1] These facts do not disclose a cause of action against the defendants named. Neither the United States, the contractor, nor Wood, the party in whose behalf this action is brought, is a party to the indemnity contract, nor is anything alleged to show any privity between those parties and the defendants who executed it; while the instrument discloses upon its face that it was an indemnity given by third parties solely for the protection of the surety company. The theory upon which the plaintiff seeks a judgment against these defendants is that he has a right in this action to avail himself of the indemnity afforded the surety company by this contract, under the principles embodied in section 2854 of the Civil Code of the state, which section provides:

"A creditor is entitled to the benefit of everything which a surety has received from the debtor by way of security for the performance of the obligation, and may, upon the maturity of the obligation, compel the application of such security to its satisfaction."

In the first place, that section is but a codification of the equitable doctrine of subrogation, and so far as these courts are concerned, where the distinction between legal and equitable remedies obtains, can be availed of only on the equity side of the court. The present action is purely one at law, seeking the legal remedy of a money judgment, and while under the state system, abolishing the distinction between legal and equitable remedies, plaintiff might perhaps have such relief in an action of this nature, the provision of the Code in no way enlarges or affects our jurisdiction in that respect. The case of Hopkins v. Warner, 109 Cal. 136, 41 Pac. 868, relied upon by plaintiff,

was a proceeding in foreclosure where the principle was strictly applicable, but obviously it has no pertinency here.

[2] But if this suit were on the equity side of the court, plaintiff would be in no better situation, since upon the facts alleged the doctrine of subrogation could not be invoked for his benefit. That doctrine, not only as codified in the above section of the Code, but in its origin, was based upon the principle that where a debtor who has given security for the performance of his obligation has himself placed an indemnity in the hands of his surety, although primarily for the protection of the latter, it will be regarded as a trust for the benefit of the creditor as well, and equity will so treat it. The reason for this is aptly stated in Hampton v. Phipps, 108 U. S. 260, 264, 2 Sup. Ct. 622, 624 (27 L. Ed. 719), in this way:

"All this, it is to be observed, as the rule verbally requires, presupposes that the fund specifically pledged and sought to be primarily applied is the property of the debtor, primarily liable for the payment of the debt; and it is because it is so, that equity impresses upon it the trust, which requires that it shall be appropriated to the satisfaction of the creditor, the exoneration of the surety, and the discharge of the debtor. The implication is that a pledge made expressly to one is in trust for another, because the relation between the parties is such that that construction of the transaction best effectuates the express purpose for which it was made."

But as further stated in that case, and which is quite as pertinent under the facts of this:

"It follows that the present case cannot be brought within either the terms or the reason of the rule; for, as the property, in respect to which the creditors assert a lien, was not the property of the principal debtor, and has never been expressly pledged to payment of the debt, so no equitable construction can convert it by implication into a security for the creditor."

And this is for the reason, as indicated, that there is no privity in interest between the indemnitors and the creditor seeking to avail himself of the benefit of the indemnity. See, also, the recent case of Goff v. Ladd (Cal.) 118 Pac. 792.

Furthermore, in this instance, the indemnity given the surety is upon a contingency which has not, so far as appears, arisen, and may never arise. The undertaking is to save it harmless from such damages as it may suffer under its bond. It has thus far suffered no injury, and there is, therefore, no right by it as against its indemnitors to which the creditor, if otherwise entitled, could be subrogated. The right of subrogation is merely a right to be substituted in place of the one to whom performance was originally due; and until there has been a breach of the contract by which the indemnitor might have been held liable to the surety, there is no right to which the doctrine can apply.

[3] The other defendants have likewise demurred to the complaint and moved to dismiss the action for want of jurisdiction in this court to entertain it. Their objection is, in substance, this: The act provides that no suit upon the bond shall be brought until after the complete performance of the contract and final settlement thereof, but shall be commenced within one year from such date, and not later. During the first six months of this period the government alone is

given the right to sue for any loss suffered by it in the premises, the bond being primarily for its protection; but in the event the government sues during that period, then any laborer or materialman may intervene and assert his rights therein, the government, however, having the first right to satisfaction as against the surety. If no suit is brought by the government, then at the expiration of such six months' period any other creditor protected by the act may, upon application, be furnished with a copy of the contract and bond, "upon which he or they shall have a right of action, and shall be and are hereby authorized to bring suit in the name of the United States," etc.; and "any creditor may file his claim in such action and be made a party thereto within one year of the completion of said work under said contract, and not later." It is then provided:

"That in all suits instituted under the provisions of this act such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the state or town where the contract is being performed for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

As appears from the complaint, the present contract was completed and settlement had on September 26, 1910, while this suit was not filed until September 11, 1911, less than one month before the expiration of the year given by the act within which an action may be brought, and much too late to comply with the requirement of the above-quoted provision for giving notice to creditors. It is contended that a compliance with these conditions is an indispensable prerequisite to enable a suitor to avail himself of the protection afforded by the act; that such steps are of the essence of the remedy, and that unless the record discloses compliance therewith the court acquires no jurisdiction to proceed. But I am not persuaded of the correctness of this view. I am unable to regard these conditions as in any proper sense jurisdictional. Jurisdiction attaches upon the filing of the complaint, while the provision in question relates to steps not required to be taken until the action has been commenced. I am inclined to agree with the suggestion of the court in Vaughan v. Stitzer (C. C.) 179 Fed. 567, that they are more in the nature of limitations upon the right to maintain the suit. Very clearly they are no part of the cause of action, since a compliance with them, for the reason stated, cannot be alleged; hence a demurrer does not lie for such omission. If, however, they are mere limitations, then perhaps they may be waived unless timely objection is made; and since the question is not jurisdictional, nor one which can arise on demurrer, I am of opinion that it is a proper subject-matter for the answer or by some appropriate objection at the trial. That defendants have a right to interpose the objection in some form and at some time I entertain no doubt; but just how it shall be raised and what effect it may exert on the rights of the parties if made, it is not now necessary to inquire.

The demurrer of the Rickon-Ehrhart Engineering & Construction Company, and the individuals composing that firm, will be sustained, and the motion to dismiss as to them granted; the demurrer of the other defendants will be overruled and their motion to dismiss denied.