[S. F. No. 9506. In Bank.—June 28, 1922.]

FIRST FEDERAL TRUST COMPANY (a Corporation), as Executor, etc., Respondent, v. HOWARD INVESTMENT COMPANY (a Corporation), et al., Appellants.

[1] Trust—Salary of Corporation Officer Pending Litigation—Resolution of Directors—Effect of.—Where a trust of corporation stock provided, among other things, that after the death of the trustor there should be paid to his son from the stock dividends the sum of $250 per month with the proviso that such payments, when received, should be a waiver of all compensation for any services he might render to the corporation, and the son, after such death, was elected president and served without compensation until all payments of dividends under the trust were discontinued by reason of legal proceedings commenced by the widow attacking the validity of the trust, whereupon the directors adopted a resolution awarding him a salary of $250 per month and providing any dividends due him under the trust should be retained by the trustee in accordance with the trust provision that receipt of a salary should be in lieu of dividends, the widow, after recovering one-half of the stock as community property, was not entitled to recover from the corporation one-half of the amount paid to the president on the theory that the payments were dividends in the guise of salary, in the absence of any evidence to such effect other than the recitals contained in the resolution providing that the salary should be in lieu of dividends.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles W. Slack, F. A. Denicke and H. S. Young for Appellants.

A. E. Shaw and Cushing & Cushing for Respondent.

SLOANE, J.—This action was brought to recover $8,375, being one-half of a sum paid by the defendant Howard Investment Company to one Frederick P. Howard, ostensibly as a salary for his services as president of the corporation.

The original plaintiff was Mrs. Emma Shafter Howard, who subsequently died, and the suit was thereafter prosecuted in the name of the present plaintiff, First Federal Trust Company, her executor.

Plaintiff's cause of action rests upon the claim that the payments in question were wrongfully made by the Howard Investment Company from a fund in which the original plaintiff, Mrs. Howard, owned a half interest.

Judgment in the trial court was for plaintiff, and defendants appeal. The matter is before us upon an order for hearing after judgment of reversal in the district court of appeal.

The facts necessary to an understanding of the case are that Mrs. Howard was the wife of Charles Webb Howard, whom she survived. In his lifetime Charles Webb Howard organized the defendant corporation, Howard Investment Company, taking in his own name 4,995 shares of the capital stock of 5,000 shares at the par value of $100 per share. The remaining five shares were issued for the purpose of qualifying directors of the corporation, but were indorsed over so that the entire beneficial interest in the corporation was in Charles Webb Howard. In consideration for the stock Mr. Howard conveyed to the corporation property valued at $500,000.

Subsequently, Charles Webb Howard created a trust wherein he transferred the 4,995 shares of stock of the Howard Investment Company to the Central Trust Com-

pany, the predecessor of the defendant Anglo-California Trust Company, in trust for the distribution of the net dividends for purposes not here necessary to set forth, other than it was provided that after his death while the trust should exist there should be paid from the balance of the dividends from said stock the sum of $250 per month to his son, Frederick Paxson Howard, with the proviso that "Such payments to Frederick Paxson Howard, personally and while living, shall be and constitute, when received by him, a waiver of all compensation for any and all services which, as an officer or otherwise, he personally may, from time to time, render to said Howard Investment Company."

After the death of Charles Webb Howard on July 17, 1908, his widow, Mrs. Emma Shafter Howard, was appointed administratrix of his estate, and instituted various actions affecting the status of the Howard Investment Company stock and the trust under which it was held. Particularly, as most intimately affecting the proceeding before us, Mrs. Howard in her individual right brought suit against these defendants and all others interested in the Howard Investment Company, and under the trust, to have an adjudication that all of the property conveyed to the Investment Company for its stock was community property of herself and husband, and adjudging that she was the owner of one-half thereof and entitled to one-half of the capital stock of said corporation, and of the dividends therefrom, subsequent to her husband's death.

She recovered judgment in the superior court sustaining her claim and directing a transfer to her of one-half of said 4,995 shares of stock. The defendant appealed, but pending such appeal an agreement was reached by all the parties in interest by which said judgment in Mrs. Howard's favor became final, and a settlement of all litigation was effected whereby Mrs. Howard transferred her half of the corporate stock to the trustee corporation and received in consideration therefor a conveyance from the Howard Investment Company of "one-half of its property and assets of every nature, kind and description, after proper deductions made for . . . its current indebtedness and its attorneys' fees incurred to date."

It is not questioned that under this settlement it was determined that the property of Charles Webb Howard, which was invested in the Howard corporation, was community property, and that upon the death of her husband Mrs. Howard became entitled to one-half of the stock issued to her husband, and that by virtue of the settlement subsequently made, on the surrender and transfer of this stock she became the owner of a one-half interest in all the property and assets of the corporation. Up to the date of this settlement and transfer Mrs. Howard's interest in the corporation was that of a stockholder and subject to the necessary and proper expenditures of the corporation for its operating expenses.

On the consummation of the settlement of April 2, 1914, Mrs. Howard in acknowledgment thereof executed to the defendants a release of all claims and demands, which recites that she thereby does "remise, release and forever discharge" the parties, including the parties to this action, and others, naming them, from "all manner of action and actions, cause and causes of actions, suits, debts, dues, sums of money, accounts, reckonings" and liabilities of every kind, which she ever had, now has, or hereafter "can, shall, or may have by virtue of any matter or thing whatsoever from the beginning of the world to the date of these presents."

It was subsequent to this settlement and release that Mrs. Howard instituted the present suit. It is predicated upon transactions growing out of the protracted litigation prior to the final settlement and release.

Upon the death of Charles Webb Howard in 1908 and the commencement of legal proceedings attacking the validity of the trust in favor of F. P. Howard and others, the distribution of dividends under the trust was discontinued. In consideration of an agreement by Mrs. Howard not to tie up the affairs of the Howard Investment Company by an application for an injunction and the appointment of a receiver, the Investment Company, and the Trustee Company, stipulated with Mrs. Howard, as testified by witnesses and found by the trial court, that pending the litigation none of the property would be disposed of, no dividends declared, no payments would be made to the trustee or divi-

dends distributed until all of the litigation commenced by Mrs. Howard involving the title to said property should be settled and determined, and that if she should be successful in the litigation that they would account to her for all the property and income, and that no payments would be authorized by the Investment Company except the necessary current expenses incurred in conserving the property and incidentally to maintain the control thereof. That these expenses were intended to include legitimate salaries to officers and employees is apparent from the fact that no exception was taken to the payment of other salaries than that to F. P. Howard.

This agreement stopped all payments of dividends to Frederick P. Howard under the trust. After his father's death in July, 1908, he was elected president of the Howard Investment Company and served without salary until October, 1908. During that month, and in consequence of the agreement to suspend distribution of the corporation's dividends under the trust, and pending the litigation, the board of directors of the Howard Investment Company adopted the following resolution:

"On motion duly made and seconded, and unanimously carried, the following preamble and resolution was adopted:

" 'Whereas, Mr. F. P. Howard, president of this company, has been devoting his time to the affairs of this company, and for such time and attention no compensation has been paid him,

" 'Now, therefore, be it resolved, that said F. P. Howard, as president of this company, be paid a salary of $250 per month, commencing with the 1st day of October, 1908, and

" 'Be it further resolved, that the Central Trust Company of California be notified that the said F. P. Howard is receiving a salary of $250 per month for services rendered to the company, and that from and after October 1, 1908, any dividends which may be due him under that certain trust agreement made and executed by the late Charles Webb Howard, be retained, in accordance with the provisions made therein, by which should said F. P. Howard receive a salary for services rendered, said salary shall be in lieu of dividends that he might receive from the

Central Trust Company under the aforesaid trust agreement.' ''

Pursuant to this resolution the Investment Company paid to Frederick P. Howard, who continued as its president, the sum of $250 per month from October 1, 1908, to May 1, 1914, about the date of the final settlement of all pending controversies over the estate.

The total sum thus paid to Frederick P. Howard was $16,750, and it was for the recovery of one-half of this amount that this action was brought by Mrs. Howard.

The theory upon which the action was maintained, and judgment for plaintiff given by the trial court, was that the money was actually paid in pursuance of the trust from money one-half of which belonged to Mrs. Howard, and that her half of the amount thus paid out should have been accounted for to her under the terms of the final settlement, and that she failed to demand and receive such sum because the alleged fact that it had been paid out in lieu of dividends was unknown to and had been concealed from her.

Such are the facts upon which the judgment appealed from rests.

It is contended by defendants that the undisputed facts defeat a recovery by plaintiff and that the facts found essential to sustain the judgment are not supported by the evidence.

It is quite evident that plaintiff's cause of action depends primarily upon whether the money sought to be recovered was paid as salary or dividends.

During the period in which these payments of $250 per month were being made to F. P. Howard, Mrs. Emma Shafter Howard's relation to the property and stock of the Howard Investment Company consisted in her right, as the widow of Charles Webb Howard, to succeed to a one-half interest in the 4,995 shares of the company's stock held by her husband as community property and the dividends therefrom accruing after her husband's death.

If the money paid to F. P. Howard during this period was legitimately paid as a salary, it was part of the current expenses of the company and infringed no right of Mrs. Howard.

If it was paid as dividends, one-half of the amount belonged to Mrs. Howard and she was entitled to recover it from whoever wrongfully misapplied it.

After the settlement was made and before this suit was commenced Mrs. Howard had reassigned her interest in the Investment Company's stock to the Trust Company and had taken therefor an assignment of one-half of all the assets of the Investment Company. Her right then was to recover any property or money in the hands of either defendant which constituted assets of the Investment Company at the date of the transfer and settlement, waiving for the present any question of estoppel by reason of the instrument of full satisfaction and release executed at the time of the settlement.

Whether this money paid to F. P. Howard and which he had received to his own use was paid from the general funds of the Investment Company as salary, or from money declared as dividends for the benefit of the trust, we are unable to see how it could longer be assets of the Investment Company. But assuming the right of Mrs. Howard to recover such money if wrongfully paid from her share of the property, the burden is upon her to show that this money was dividends and not salary. We do not understand that it is disputed that the Howard Investment Company had the right to pay F. P. Howard, as president of the company, a salary. If it had such right and exercised it in good faith, the plaintiff was not injured, for the reason that during such period Mrs. Howard's rights to profits of the business were those of a stockholder and subject to the reasonable operating expenses of the company. Indeed, there would be no doubt of estoppel, by her release, to complain of such payments, because it is conceded that Mrs. Howard and her attorneys were aware almost from the beginning that what they assumed to be a salary of $250 per month was being paid to F. P. Howard as president of the Investment Company.

Plaintiff's right of recovery then rests upon the sufficiency of proof that the payments made to F. P. Howard were dividends and not salary, and that Mrs. Howard was deceived and misled by the conduct or declarations of the defendants in assuming that the payments were for salary.

We find no evidence in the record to sustain either of these propositions. The only fact pointed out upon which the plaintiff professes to rely as proof that these payments were dividends in the disguise of salary is contained in the recital of the resolution providing for these monthly payments that "said salary shall be in lieu of dividends" under the trust. Such oral testimony as was given on the subject was precisely in line with this resolution.

Appellants attach an unwarranted significance to this recital. Used as it was in connection with the preceding provision that "F. P. Howard, as president of this company, be paid a salary of $250 per month," and notice to the trustee that dividends thereafter should not be paid, it can only be construed to mean that he should not also be entitled to the trust payment from the dividends, but that such salary should also satisfy the claim under the trust, or, in the words used, be "in lieu" thereof. As the declaration of trust provided that the dividend allowance when received should be in lieu of salary, so the salary resolution provided that the salary, when received, should be in lieu of dividends. Any less precaution on the part of the Investment Company in providing for this salary during the time when the dividend payments were discontinued would have been inexcusable. Without some such condition in the resolution F. P. Howard would have been entitled, after receiving this salary, to subsequently demand his dividends from the trust when it again commenced to function.

This is what is decided, and all that is decided, in the case of *Howard* v. *Anglo-California Trust Co.*, 34 Cal. App. 164 [167 Pac. 177], an action in which Frederick Paxson Howard attempted to recover from the trustee of the trust here involved the amount of his dividend allowance accumulated during the period the salary was paid and the trust tied up by Mrs. Howard's litigation.

It was there held that in receiving the salary under the conditions stated in the resolution granting it he had waived his right to trust dividends during the period of such salary; that while in the absence of such proviso he would have been entitled to both salary and dividends, his acceptance of the salary under the terms specified estopped him from collecting under the trust.

It will be observed that the trust proviso did not prohibit him from collecting his allowance thereunder if he received a salary, but prevented his receiving a salary while he was paid under the trust, and it was only this reservation in the salary resolution that prevented his collecting both.

The expression of the court of appeal on this point is as follows:

"We are of the opinion that the trial cou : rightly resolved this question in favor of the respondents. It is true that under the peculiar wording of the proviso in the trust instrument above set forth, the plaintiff cannot be held to have waived any right which he might otherwise have to receive compensation for his services as an officer of the Howard Investment Company until such time as he had actually received the payments coming to him as a beneficiary of said trust; and had the Howard Investment Company voted to pay and paid the plaintiff said salary during the period when he was not receiving the monthly payments due him as such beneficiary, without the limitations attending the allowance and receipt of such salary in the foregoing resolution, the plaintiff's right of recovery in this action would have been unassailable. But such was not the case; and while it is true that the original trustee and the individual respondents herein were not parties to the contract contained in the resolution providing for the payment of a salary to plaintiff as president of the Howard Investment Company, yet the interrelation of the parties was such that said resolution cannot be otherwise construed than as intended to substitute the monthly salary which the plaintiff was to receive thereunder for the monthly sum he was otherwise entitled to receive, but was not as yet receiving, from the trustee, and that when plaintiff undertook to perform the duties of president of the Howard Investment Company for the monthly salary to be allowed him under the limited terms of said resolution, he must be understood to have agreed to waive his right to receive his monthly stipend from the trustee while such salary was being paid, and, in view of the interrelation of the parties, it must also be held that this was a waiver made expressly for the direct benefit of the trustee and of the other ultimate beneficiaries of the funds and properties of the trust."

This decision does not hold that the payments made by the Investment Company were dividends and not salary but that they were salary, in place of dividends, and if the reservation had not been made, F. P. Howard would have recovered salary plus dividends.

It therefore appears that there was nothing in the relation of the defendants to the manner of payment of the $250 per month which made the transaction different from that which the plaintiff all along supposed it to be, the payment of a salary. The fact that it also precluded any further payment of trust dividends certainly did not operate to Mrs. Howard's disadvantage.

Moreover, there is nothing to indicate that there was any misrepresentation or concealment to prevent plaintiff from ascertaining the precise state of the matter. The resolution was spread on the minutes of the corporation, the payments were carried on the corporation books as part of the expense account, and Mrs. Howard and her representatives had or could have had access to these records at any time.

They knew of the salary, they knew the conditions of the declaration of trust regarding waiver of salary while payments were made under the trust, and were reasonably put upon inquiry to inform themselves as to the state of the matter, at least before entering into a general release of all claims and demands against the defendants.

That the salary agreement was entered into in good faith, and not as a subterfuge, can scarcely be questioned, as one of plaintiff's attorneys was a director of and attorney for the Investment Company when the salary resolution was adopted, and advised as to its legality and fairness, and there is no evidence that F. P. Howard, as president of this corporation, operating under a half million dollars capital, was not entitled to pay for his services during this long period when he was deprived of his income from the trust.

The declaration of trust, it will be recalled, only made the payment of the dividend allowance a waiver of the right to a salary, when the trust fund was being received by him.

Even if it might be surmised that the position of president of this corporation was a sinecure, and carried with it no duties or responsibilities calling for remuneration,

and that this salary arrangement was a pure gratuity to protect F. P. Howard from the loss of his trust income, we can indulge in no such presumption under the evidence. As already pointed out, all the evidence on this subject indicates that the services rendered were in good faith and considered by the directors of the corporation worth to the corporation the amount paid.

The stipulation between the parties to preserve the assets of the Investment Company *in statu quo* during the pendency of the litigation provided for a continuance of payments for the current operating expenses necessary for the conservation of the corporation's business and property, and that this was intended to include salaries is evidenced by the continual acquiescence of the plaintiff in the payment of this and other amounts, as salaries, with full knowledge that the payments were being made. Plaintiff's demand here is only alleged on the theory that what was thought to be a payment of salary, was discovered later on to have been an advancement of dividends.

[1] In the light of the undisputed facts we conclude there was no foundation for the finding of the trial court that the money in question was not paid in good faith as a salary, or that it was intended as an advancement of dividends under the trust.

As already stated, and in the absence of any evidence of fraud or mutual mistake of the parties there is also strong reason for holding the plaintiff estopped from reviving her claims against the defendants after the complete agreement of release and satisfaction entered into on the consummation of the contract of settlement, even though it had appeared that there had been a misapplication of some of the funds in which Mrs. Howard was interested. This money paid to F. P. Howard was part of the accounts of the Investment Company which entered into the determination of its available assets at the time of the settlement. It was taken into consideration in making the division agreed upon, and it may be inferred that the settlement would not have been reached, if, at the time, the Investment Company's right to have credit for this salary payment had been disputed. There is no claim for rescission here, and no offer to place the defendants *in statu quo*, as a condition of this further demand.

189 Cal.—15

There are other questions presented on this appeal, but in view of our conclusion that the plaintiff has established no cause of action it is unnecessary to consider them.

The judgment is reversed.

Shaw, C. J., Wilbur, J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.